## McNAC *et al.* v. JONES *et al.*

No. 2654.  Opinion Filed June 10, 1913.

(132 Pac. 1088.)

1.   **TRUSTS—Trustee—Sale of Land—Conveyance by ·Purchaser.**
     Evidence examined, and held to reasonably support the finding
     of the court below, to the effect that there was no violation of
     the agreement between the heirs of the deceased Creek Indian
     and Martha Jones concerning the sale of the inherited lands.

2.   **INDIANS—Alienation of Lands—,Right.** The lands in contro-
     versy were patented to the heirs of S., a Creek freedman, said
     patent being approved by the Secretary of the Interior on the
     9th day of September, 1904. In May, 1905, part of said heirs
     conveyed their interest in said land to J. Held, that said lands
     were alienable in May, 1905.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Mary ·Coleman against Prince Coleman, a minor,
Sam McNac, Charles F. Runyan, and others. From the ·judg-
ment, McNac and Runyan bring error. Affirmed.

*Chas. F. Runyan,* for plaintiffs in error.
*Owen & Stone,* for defendant in error Martha Jones.

KANE, J.  This was an action commenced by Mary Cole-
man against Prince Coleman, a minor, Dilsie Harris, of un-
sound mind, Lee Love, her guardian, Sam McNac, Charles F.
Runyan, Wiley Jones, and Martha Jones, for the purpose of
partitioning a certain tract of land situated in the Creek Na-
tion. Upon trial the court found that the plaintiff Mary Cole-
man was entitled to an undivided one-half interest to and in
said land, and that Martha Jones was entitled to the remainder
thereof, except a small portion, which was found to be the prop-
erty of the minor, Prince Coleman. The defendants McNac and

Runyan excepted to that portion of the decree in favor of Martha Jones, and instituted this proceeding for the purpose of reversing the same. It is admitted that the land in controversy was patented to the heirs of Peter Stidham, a Creek freedman, and that said patent was duly approved by the Secretary of the Interior on the 9th day of September, 1904; that Peter Stidham died intestate on the 29th day of August, 1900, leaving surviving, a wife, who was also a Creek freedman, a brother, Prince Stidham, three sisters, Jane Franklin, Eliza Rentie, and Dilsie Harris, and Dolly Stidham, the widow of the deceased brother, and March Coleman, Jessie McGee, Evaline Duff, and Prince Coleman, all lineal descendants of the deceased brother of Peter Stidman; that the wife of Peter Stidman survived him and died intestate on April 18, 1905; leaving as her sole heir the plaintiff herein, Mary Coleman; that Mary Coleman was entitled to an undivided one-half interest to and in the land in controversy. It seems that in May, 1905, all the other heirs except Prince Coleman, who inherited a very small interest, conveyed the land in controversy to Martha Jones with the understanding that she would find a purchaser, sell the land, and divide the proceeds among the heirs, after deducting the reasonable expenses of the sale. In pursuance of this agreement Martha Jones sold the land to F. M. Davis & Co., which company about a month thereafter conveyed the land to V. S. Cooper, who about four months after the date of his purchase sold and conveyed the land to Martha Jones.

The questions arising out of this state of affairs, as stated by counsel for plaintiffs in error in his brief, are:

(1) Whether or not the defendant in error Martha Jones, having taken the title from the collateral heirs of the decedent in said lands as a trust for sale, and having violated the agreement made at the time she took the title, can hold the said title as against the said heirs or their grantees.

(2) Whether or not deeds of conveyance executed by the heirs of a deceased freedman allottee of the Creek Nation in

May, 1905, were void because the sale of said lands was restricted, both as to surplus and homestead.

(3) Whether or not the homestead portion of. said lands were alienable in May, 1905, by the heirs of a deceased freedman allottee of the Creek Nation.

If the court below found the facts to be as stated by counsel in his first contention, or, if the evidence conclusively established such facts, undoubtedly it would be necessary to reverse the judgment rendered. But the court found, and there was evidence to the effect, that Martha Jones fully complied with the terms of the trust, and that the sale by her to F. M. Davis & Co. was executed in strict pursuance of its terms; that the consideration received for the land was divided among the heirs as agreed upon; that there was no agreement or understanding at the time of the conveyance to F. M. Davis & Co. whereby Martha Jones was to thereafter acquire any title to or in the land sold; that she had nothing to do with the sale of the land by F. M. Davis & Co. to Cooper, and there was no agreement or understanding by the terms of which Cooper was to convey the land to her; that all of her transactions concerning the land were *bona fide,* and that she merely purchased the same from Cooper in due course for a valuable consideration when he offered the same for sale preparatory to removing from that part of the state. This evidence must have been accepted by the lower court as true, as it found that the defendant Martha Jones by virtue of the chain of title set up in her answer "was the owner of an undivided 29/30 of an undivided one-half interest in fee * * * the said Martha Jones being the owner by conveyance set forth in her answer of the undivided interest of Prince Stidham, * * * " and found as a matter of law that the defendant Martha Jones "is entitled to the possession of and is the owner in fee simple of an undivided 29/30 of an undivided half interest in said lands." There is scarcely any doubt that upon the foregoing statement of facts, which there is ample evidence to support, the conclusion reached by the court below upon that question is correct.

The remaining questions have been answered by this court in *Rentie et al. v. McCoy et al.*, 35 Okla. 77, 128 Pac. 244; *Parkinson v. Skelton,* 33 Okla. 813, 128 Pac. 131, and *Manuel v. Smith,* 35 Okla. 478, 130 Pac. 1159; *Deming Investment Co. v. Bruner Oil Co.,* 35 Okla. 395, 130 Pac. 1157. And the question stated by counsel in the third subdivision has been finally settled by the Supreme Court of the United States in *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834. In *Rentie et al. v. McCoy et al., supra,* Scott Rentie, who was a minor and a duly enrolled Creek freedman, died July 2, 1899, without a surviving widow or children; his allotment not having been selected at the time of his death. On August 15, 1902, his distributive share of the land as a member of said tribe was allotted to his heirs. On April 8, 1905, Morris and Katie Rentie, who were the father and mother of Scott Rentie, and his surviving heirs, executed in due form a warranty deed covering said allotment to D. On May 25, 1905, D. conveyed by warranty deed to E. M., who then and there took possession of said premises and remained in possession until he conveyed to H. M., to whom he surrendered possession. H. M. continued in possession until 1909, when an ejectment action was instituted against him. *Held,* (a) that said land passed to Morris and Katie Rentie free from restrictions; (b) that said land was alienable on April 8, 1905, when Morris and Katie Rentie conveyed to D.

Upon the authority of the foregoing cases, the judgment of the court below is affirmed.

All the Justices concur.