## PARKS *et al.* v. LOVE *et al.*

No. 4908. Opinion Filed September 14, 1915.

(151 Pac. 885.)

**INDIANS—Allotments—Descent—Homestead.** Peggy Phillips, a Creek freedman citizen, duly enrolled as such, received her allotment, for which a certificate was issued. Subsequent to the issuance of certificate and prior to the issuance of patent she died, October 20, 1903, intestate, without issue. Patents were issued designating homestead and surplus lands. **Held** that, under Act. Cong. April 21, 1904, c. 1402, sec. 1, 33 Stat. 204, said lands passed to Willie Love and Jonas Love free from restrictions, and alienable in February and March, 1905. **Held,** further, that under such facts the homestead quality did not attach.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Muskogee County; R. P. deGraffenreid, Judge.*

Action by Willie Love and others against Laura Parks and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

*Bailey, Wyand & Moon,* for plaintiffs in error.

*Foreman & Simms,* for defendants in error.

Opinion by RITTENHOUSE, C. This is an action to quiet title to the northeast quarter of section 9 in township 15 north, range 11 east, situated in the Creek Nation, which constitutes the allotment of Peggy Phillips, who was on the Creek freedman roll, and who died October 20, 1903, after certificate of allotment had been issued and prior to issuance of patent, leaving as her only heirs at law Willie Love and Jonas Love, the children of her half brother, they being mixed-blood Creeks.

The cause was tried, and the following facts were stipulated:

"That Peggy Phillips, the wife of Pompey Phillips, was a duly enrolled freedman citizen of the Creek Nation, and that as such citizen there was allotted to her as her proportionate share of the Creek Nation the southeast quarter of the northeast quarter of section 9, township 15 north, and range 11 east, 40 acres, as her homestead, and the west half of the northeast quarter and the northeast quarter of the northeast quarter of section 9, township 15 north, and range 11 east, 120 acres, as her surplus allotment; that duly approved deeds by Gen. Pleasant Porter, Principal Chief of the Creek Nation, which deeds were duly approved by the Secretary of the Interior; that certificates of allotment were issued and delivered to the said Peggy Phillips by ·the Commission to the Five Civilized Tribes during her lifetime; that the said Peggy Phillips departed this life on the 20th day of October, 1903, leaving neither child nor children, nor descendant of child or children, neither father nor mother, nor brothers nor sisters, but leaving as her only heirs at law the plaintiffs Willis Love and Robert Jonas Love, the sons of Robert Love, deceased, who was a half-brother of Peggy Phillips, deceased, the allottee of the land in controversy; that on the 15th day of February, 1905, deeds for said homestead and allotments executed by Pleasant Porter, as Principal Chief of the Creek Nation, and duly approved by the Secretary of the Interior, were delivered to Pompey Phillips, the surviving husband of the said Peggy Phillips, deceased.

"It is further stipulated and agreed that a judgment in favor of O. F. Parks and against Pompey Phillips was recovered in the United States Court for the Western District of the Indian Territory at Okmulgee on the 12th day of April, 1906, which was recovered by the said O. F. Parks against Pompey Phillips for the recovery of this land, and that Pompey Phillips was under process issued by said court put out of possession of said land; that subsequently, and on the 20th·day of May, 1907, Willis Love and Jonas Love, by their warranty deed, duly and legally

executed in favor of the said Pompey Phillips, vested all their rights, title, and interest in and to the south half of the northeast quarter of section 9, township 15 north, and range 11 east, in the Creek Nation of the Indian Territory, with all the improvements thereon and appurtenances or immunities thereunto belonging, in any wise appertaining thereto, and delivered actual physical possession of said land to the said Pompey Phillips; that the plaintiffs Willis Love and Jonas Love are duly enrolled one-fourth Creek Indians by blood, as appears from the rolls of citizens and of freedmen of the Five Civilized Tribes and approved by the Secretary of the Interior.

"It is further stipulated that the parties hereto, by the parties hereto, that a certain warranty deed dated the 2d day of March, 1905, from Robert Jonas Love, unmarried, to O. F. Parks, conveying the land in controversy, was executed and delivered by said Robert Jonas Love and delivered by him to the said Parks, which said deed was properly acknowledged and filed for record on the 4th day of March, 1905, in the office of the United States clerk and *ex officio* recorder at Okmulgee, conveying all of said lands for the purported consideration of $225; that on the 17th day of February, 1905, Willis Love, unmarried, by warranty deed conveyed to O. F. Parks all the land in controversy for the purported consideration of $400; said deed was duly acknowledged and was filed for record on the 20th day of February, 1905, at 8 o'clock a. m., in the office of the clerk and *ex officio* recorder in the United States Court at Okmulgee; that on the 2d day of March, 1905, by general warranty deed, Robert Jonas Love, unmarried, conveyed to O. F. Parks, for the alleged consideration of $225, all of said land; that said deed, in addition to being signed by Robert Jonas Love, was signed by Annie Love, and that said deed was duly acknowledged and delivered; that on the 26th day of April, 1907, the defendant O. F. Parks executed and delivered a general warranty deed to the defendant Henry Hatcher conveying to him all of said land for the purported consideration of $1,500, which said deed was

properly acknowledged and filed in the proper recording district." ·

The court found that Peggy Phillips died on October 20, 1903, and left surviving as her only heirs at law the plaintiffs Willie Love and Jonas Love, who became by inheritance the owners in fee simple of all of said lands; that said lands were restricted against alienation by the terms of the Supplemental Creek Agreement approved March 30, 1902; that Willie Love and Robert James Love were duly enrolled Creek citizens by blood, and were such enrolled citizens when the deeds to O. F. Parks were executed on February 17, 1905, and March 2, 1905; that on the dates said deeds were executed said Willie Love and Robert Jonas Love, being Creek Indians by blood, were incompetent to convey said lands, and that the said lands came to them with restrictions upon them and that said restrictions were not removed by any law prior to the execution of said deeds; and upon these findings the trial court held the deeds to be null and void and that they conveyed no interest whatever to the said O. F. Parks. We cannot agree with these findings, as the deeds were not void because of any restriction contained in the Supplemental Creek Agreement approved March 30, 1902. It is apparent that the lands involved were inherited from Peggy Phillips, and any restrictions against the alienation of the same were removed under and by virtue of that part of Act. Cong. of April 21, 1904, c. 1402, sec. 1, 33 Stat. 204, which reads as follows:

"All the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may,

with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the Union agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

Under the provisions of this act, Peggy Phillips, if living on April 21, 1904, could alienate any portion of her allotment, except that portion which would be impressed with the homestead character. In the instant case the lands were not impressed with the quality of a homestead, and the heirs of Peggy Phillips had the legal right to sell and dispose of the lands in question free from any restrictions. This was decided in the case of *Parkinson v. Skelton*, 33 Okla. 813, 128 Pac. 131, wherein the averments in the answer which were challenged by a demurrer were that one Belcher, an adopted and enrolled citizen of the Creek Tribe of Indians, died in 1900, without issue and intestate. Prior to his death he had selected an allotment, and certificate had been issued. He left surviving him as his sole heirs certain mixed and full-blood Indians, enrolled members of the Tribe, and patent was issued to his heirs, both as to homestead and surplus. The deeds were executed by the heirs in March, 1905. Under the facts the court said in the syllabus:

"The word 'allottees,' as used in Act April 21, 1904, c. 1402, 33 St. at L. 204, refers to the parties to whom an allotment is made, and not to their heirs; and where the allottee under the said act would have been authorized to alienate his land, had he lived, the same, on his death,

was alienable by his heirs, without reference to their blood."

"B., a white man, duly enrolled as a member of the Creek Tribe of Indians, received his allotment, for which a certificate was duly issued, and died intestate and without issue in the fore part of the year 1900. Thereafter patent conveying the said allotment, homestead and surplus, was duly issued to his heirs. Held, that the homestead quality did not attach, and if any restrictions existed on alienation of any of said land they were removed by Act Cong. April 21, 1904, c. 1402, 33 St. at L. 204; and the heirs were thereafter authorized to sell and convey the same."

The case at bar comes squarely within the principle advanced in the foregoing case, and needs no further citations to support it, although the subject has been elaborately discussed in *Iowa Land & Trust Co. et al. v. Dawson*, 37 Okla. 593, 134 Pac. 39; *Young et al. v. Chapman*, 37 Okla. 19, 130 Pac. 289; *McNac et al. v. Jones et al.*, 38 Okla. 321, 132 Pac. 1088; *Rentie et al. v. McCoy et al.*, 35 Okla. 77, 128 Pac. 244; *Manuel v. Smith et vir*, 35 Okla. 478, 130 Pac. 1159; *Deming Inv. Co. v. Bruner Oil Co. et al.*, 35 Okla. 395, 130 Pac. 1157; *Hawkins et al. v. Okla. Oil Co. et al.* (C. C.) 195 Fed. 345; *Mullen v. U. S.*, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834.

The cause should be reversed and remanded.

By the Court: It is so ordered.